**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.

**ANTHONY T. WHITTAKER,**

    **Defendant.**

Case No. 2:06-cr-95(2)
JUDGE EDMUND A. SARGUS, JR.

**OPINION AND ORDER**

This matter is before the Court on Defendant Anthony T. Whittaker's Motion for Compassionate Release. (ECF No. 319.) The Government opposes Defendant's release. (ECF No. 321.) For the following reasons, Defendant's motion is **GRANTED**.

**I.**

On September 20, 2006, Defendant pleaded guilty to one count of possession with intent to distribute more than five kilograms of cocaine and 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 846 and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). (ECF No. 141.) On April 27, 2007, Defendant was sentenced to a total of 360 months' imprisonment. (ECF No. 218.) In July of 2014, Defendant's sentenced was reduced to a total of 228 months' imprisonment following the Government's Rule 35 motion. (ECF No. 290.) Defendant is projected to be released on June 8, 2021, less than five months from now. (ECF No. 319 at 2.) Due to the COVID-19 pandemic, Defendant now asks the Court for a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (*Id.*)

**II.**

Since Congress passed the Sentencing Reform Act of 1984, federal law has authorized

1

courts to reduce the sentences of federal prisoners with extraordinary health concerns and other hardships, but only under very limited circumstances. *See United States v. Ruffin*, 978 F.3d 1000, 2020 U.S. App. LEXIS 33689, at *8 (6th Cir. 2020); *see also* Pub. L. No. 98–473, ch. II(D) § 3582(c)(1)(A), 98 Stat. 1837 (1984). Prior to the passage of the First Step Act of 2018, a district court could grant compassionate release sentence reductions only upon motion by the Director of the Bureau of Prisons ("BOP"). *See id.*

On December 21, 2018, Section 603(b) of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, modified 18 U.S.C. § 3582(c)(1)(A) to allow a sentencing court to reduce an imposed sentence. The statute provides:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendants' facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

As the Court of Appeals explained in *Ruffin*, the statute contains "three substantive requirements for granting relief." *Ruffin*, 2020 U.S. App. LEXIS 33689, at *9. First, the court must initially find that "extraordinary and compelling reasons warrant such a reduction." *Id.* (citing § 3582(c)(1)(A)). Second, before granting a reduced sentence, the Court must find "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at *11. But courts may skip this second step and have "full discretion to define

2

'extraordinary and compelling' without consulting the policy statement U.S.S.G. § 1B1.13" when an incarcerated person files the motion for compassionate release, because § 1B1.13 is not an "applicable" policy statement when an incarcerated person files the motion. *United States v. Jones*, — F.3d —, No. 20-3701, 2020 WL 6817488, at *8–9 (6th Cir. Nov. 20, 2020). Third and finally, even if the Court finds that extraordinary and compelling reasons exist, the Court may not grant a release before considering the sentencing factors set forth in § 3553(a). *Ruffin*, 2020 U.S. App. LEXIS 33689, at *12. This last step gives the Court "substantial discretion" in deciding whether to reduce or modify a sentence. *Id.*

### III.

Defendant moves the Court for a compassionate release. He has satisfied the administrative requirements of 18 U.S.C. § 3582(c)(1)(A), as the Government acknowledges. (ECF No. 321 at 5.) Defendant submits that he has severe obesity, hypertension, anemia, and diabetes, and that these medical conditions put him at an increased risk of severe illness if he contracts COVID-19. (ECF No. 319 at 2–3.) He is 43 years old. His medical records confirm that he has a body mass index of 40–44.9 and that he takes medication for hypertension. (*See* ECF No. 319-4.) The records also confirm that has been diagnosed with prediabetes. (*Id.*) Defendant is incarcerated at FCI Manchester, which currently has 63 active COVID-19 cases among inmates.[1] He argues that his medical conditions and the conditions at FCI Manchester put him at an increased risk contracting COVID-19 and suffering from severe illness or death. As such, Defendant requests a compassionate release and requests that he be released to his mother's home in New Jersey.

---

[1] BOP, *COVID-19 Cases* (accessed on January 13, 2021), https://www.bop.gov/coronavirus/.

3

The Government opposes Defendant's release. It acknowledges that COVID-19 is impacting FCI Manchester significantly but argues that Whittaker only offers "speculative concern" over potential harm. (ECF No. 321 at 7.) Further, the Government argues that the sentencing factors counsel against granting a compassionate release, pointing to Defendant's lengthy disciplinary record while incarcerated. (*Id.* at 8.) However, the Government also acknowledges that Defendant has served almost 98% of his sentence and that Defendant has rendered substantial assistance to the Government throughout his incarceration. (*Id.*)

### A. Extraordinary and Compelling Reasons

When an incarcerated person files a motion for compassionate release—as Defendant has done here—the Court has "full discretion to define 'extraordinary and compelling'" and is not bound by the reasons listed in policy statement § 1B1.13. *Jones*, 2020 WL 6817488, at *9. In defining "extraordinary and compelling," it is a "common practice" for courts to rely on official guidelines from the CDC. *United States v. Elias*, No. 20-3654, —F.3d—, 2021 WL 50169, at *4 (6th Cir. Jan. 6, 2021). Looking to CDC guidelines, a defendant can show "extraordinary and compelling reasons" if they have an underlying health condition that definitively puts them at an increased risk of severe illness if they contract COVID-19 while incarcerated. *See, e.g.*, *United States v. Readus*, No. 16-20827-1, 2020 WL 2572280, at *2 (E.D. Mich. May 21, 2020) (relying on CDC guidelines and granting compassionate release to 33-year-old defendant who had severe obesity, hypertension, sleep apnea, and prediabetes); *United States v. Crawford*, No. 2:18-CR-00075-3, 2020 WL 3869480, at *2 (S.D. Ohio July 9, 2020) (relying on CDC guidelines and granting compassionate release to defendant with diabetes and high blood pressure). But "a generalized risk" of contracting COVID-19 due to conditions of confinement will not suffice. *United States v. Jent*, No. CR 6:13-026-DCR, 2020 WL 6829760, at *1 (E.D. Ky. Nov. 20, 2020).

The Court finds that Defendant has shown extraordinary and compelling reasons justifying release. According to the CDC, individuals with severe obesity "are at increased risk of severe illness from the virus that causes COVID-19."[2] A study published by the American Heart Association found that patients with severe obesity had "slightly more than double the risk of being put on a ventilator and a 26% higher risk of death compared to normal-weight patients."[3] "Severe obesity" is defined as having a body mass index of greater than 40 kg/m$^2$.[4] Defendant's medical records show that he currently has a body mass index over between 40–44.9 kg/m$^2$, placing him in a known high-risk category for COVID-19. He also suffers from hypertension and prediabetes, two conditions that the CDC states "might" increase the risk of severe illness from COVID-19.[5] Defendant's conditions of confinement diminish his ability to take precautions against the virus, and FCI Manchester currently reports over 60 active cases despite the BOP's best efforts to prevent the spread of the virus within its facilities. While "extraordinary and compelling" is a difficult standard to meet, Defendant's heightened risk of severe illness or death from COVID-19 is sufficient to satisfy this standard.

**B. Sentencing Factors**

Before granting a compassionate release, the Court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). § 3582(c)(1)(A). Those factors are as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[2] CDC, *People with Certain Medical Conditions* (updated Dec. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity.

[3] Thor Christensen, *COVID-19 patients of all ages with obesity face higher risk of complications, death*, American Heart Association *(*Nov. 17, 2020), https://www.heart.org/en/news/2020/11/17/covid-19-patients-of-all-ages-with-obesity-face-higher-risk-of-complications-death.

[4] *Id.*

[5] CDC, *People with Certain Medical Conditions* (updated Dec. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#diabetes

5

      (2) the need for the sentence imposed—

          (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

          (B) to afford adequate deterrence to criminal conduct;

          (C) to protect the public from further crimes of the defendant; and

          (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

§ 3553(a).

Balancing all the applicable factors, the Court finds that compassionate release is appropriate. Defendant's criminal conduct was serious. He was involved in the distribution of a substantial amount of narcotics. However, Defendant has served nearly 15 years in prison for his offense and is scheduled to be released in less than five months. This term is adequate to reflect the seriousness of the offense, promote respect for the law, and is a just punishment. Keeping defendant confined for the remaining few months of his long sentence would do little to promote the goals of sentencing and would needlessly keep Defendant exposed to an elevated risk of serious illness or death from COVID-19. Releasing Defendant now expedites his placement into a halfway house with the goal of lowering his risk of contracting COVID-19.

Following Defendant's release from FCI Manchester, Defendant will serve a term of three months at a halfway house as a condition of supervise release. The halfway house will be designated by a probation officer of this Court. Defendant's term in a halfway house will help him reintegrate into society for a productive and law-abiding life after nearly 15 years of imprisonment.

**IV.**

Accordingly, the Court **GRANTS** Defendant's Motion for Compassionate Release. (ECF No. 319.) The Court **ORDERS** that Defendant be immediately placed in quarantine and that he

be released from FCI Manchester **FOURTEEN DAYS** after this Order is issued.  Following Defendant's release from BOP custody, Defendant will immediately begin a term of three months in a halfway house as a condition of supervised release.  Defendant will remain under supervision of this Court, and a probation officer of this Court will select an appropriate halfway house prior to Defendant's release from BOP custody.  After Defendant completes three months in a halfway house, Defendant will begin serving his original term of supervised release.

    **IT IS SO ORDERED.**

**1/14/2021**　　　　　　　　　　　　　　　　 **s/Edmund A. Sargus, Jr.**
**DATE**　　　　　　　　　　　　　　　　　　　**EDMUND A. SARGUS, JR.**
　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**